ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

SHIPCO TRANSPORT, INC.,

                    Plaintiff,

                                        22 Civ. 3577 (LLS)

                                        OPINION & ORDER

            - against -

THE ROLL ON ROLL OFF COMPANY, LLC,
d/b/a THE RORO COMPANY

                    Defendant.
- - - - - - - - - - - - - - - - - -X

     This dispute arises out of a cargo shipment that was

successfully delivered to the port of discharge but never

claimed by the receiving party. As a result, the shipper,

plaintiff Shipco Transport, Inc. ("Shipco"), incurred thousands

of dollars in fines and fees from the port. Shipco now aims to

hold the intermediary, defendant The Roll on Roll off Company,

LLC ("RORO"), liable for those fines.

     RORO moves to dismiss the Complaint for, among other

reasons, lack of personal jurisdiction. Dkt. No. 9. For the

following reasons, its motion is granted.

**I.   Background**

     The following facts are taken from the Complaint and are

presumed to be true for the purposes of this motion.

     Shipco, a New Jersey entity with its principal place of

business there, and RORO, a Florida entity with its principal

1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/27/23

place of business there, are both non-vessel operating common carriers ("NVOCC"s) in the business of providing shipping, freight, and logistic services to customers interested in shipping cargo by ocean freight. Dkt. No. 1 ¶¶ 1-4. Neither party owns the vessels carrying out the shipments, but they assist with liaising between cargo owners and the ocean freight carriers.

Hoodblue, S.A. ("Hoodblue") needed to move a load of forklifts, generator(s), and other machinery (the "cargo") from Baltimore, Maryland to Iquique, Chile. Id. ¶¶ 5, 7. It hired RORO as a licensed freight forwarder to arrange for shipment of the cargo by ocean passage. Id.

In that capacity, RORO, on October 20, 2019, nominated and booked a portion of the cargo to be shipped with Shipco. Id. ¶ 5. That shipment had the Bill of Lading/Booking Number 10530838. Id. A week later, on October 27, 2019, RORO made a second booking with Shipco to ship the remaining cargo, under the Bill of Lading/Booking Number 10538250. Id. ¶ 7. RORO's and Shipco's relationship was memorialized in a Carrier to Carrier Agreement. Dkt. No. 11 Ex. 3.

Shipco arranged for the first shipment to be on the Maersk Gateshead and the latter to arrive on the Dublin Express. Dkt. No. 1 ¶¶ 6, 8. In doing so, Shipco prepared a Bill of Lading for each shipment (collectively the "Bill(s) of Lading"). "A bill of

2

lading is a document normally issued by the shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above." Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 823 (2d Cir. 2006).

The Bill(s) of Lading identified all the parties relevant to the transaction—Hoodblue as the shipper; Swisscorp Import and Export, S.A. ("Swisscorp") as the consignee; Saco Shipping, S.R.L. ("Saco") as the notify party (the party to be given notice once the cargo arrived in Iquique, Chile); and RORO as the forwarding agent. Dkt. No. 11 Ex. 2; see Dkt. No. 1 ¶¶ 9, 10. Saco was the only party who signed the Bill(s) of Lading. Neither party asserts that RORO signed the Bill(s) of Lading, see Dkt. No. 13 Ex. 6; Dkt. No. 11 Ex. 2, although Shipco does allege that their terms were communicated to RORO.

Both the Maersk Gateshead and the Dublin Express arrived in Iquique, Chile on schedule, and Saco was notified of its obligation to claim the cargo. Dkt. No. 1 ¶¶ 11, 12. However, neither it nor any other responsible party claimed the cargo in a timely manner, and Shipco consequently suffered $130,000,000 in additional carrier and port charges. Id. ¶¶ 13, 15, 20.

Shipco brought suit against RORO to be indemnified for those charges, as it alleges it is entitled to by the Bill(s) of

Lading. Id. ¶¶ 21-25. No other party to the transaction is joined in the suit.

Shipco alleges that the Bill(s) of Lading give this Court jurisdiction over RORO. Id. ¶ 2. The Bill(s) of Lading contain a forum selection clause that states:

> The Merchant and Carrier warrant and agree that all disputes whatsoever arising from or connected to the Bill of Services are subject to the following: Any and all disputes under this Bill howsoever arising or actioned and whether stated in contract or tort or otherwise, must be exclusively brought before the U.S. District Court for the Southern District of New York and without regard to its conflict of law rules.[1]

Dkt. No. 11 Ex. 2. Notably absent from the clause is an explicit provision that either party consents to jurisdiction in this forum.

RORO moves to dismiss the Complaint on a variety of grounds, primarily for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II. **Legal Standards**

On a Rule 12(b)(2) motion, plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84

---

[1] Under the Terms and Conditions of the Bill(s) of Lading, the Carrier is Shipco. Who is a Merchant is not as clear. Shipco alleges that RORO qualifies. Dkt. No. 1¶ 23. RORO contests that designation, arguing that the term is limited to Hoodblue. The Court, however, need not decide the proper scope of the term as the Court does not reach the merits of this action.

4

(2d Cir. 2001). Where, as here, a district court does not conduct a full-blown evidentiary hearing and instead just relies on the pleadings, affidavits, declarations,[2] and records attached to them, the plaintiff must only make a "'prima facie showing of personal jurisdiction.'" S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010). The Court construes the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in its favor, Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013), but does not accept as true legal conclusions couched as factual allegations, In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013).

This Court may have personal jurisdiction over RORO if (A) RORO consented to a valid and enforceable forum selection clause or (B) its exercise of jurisdiction is proper under the laws of the New York and comports with the Due process clause of the Constitution. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006); Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).

---

[2] In determining this Rule 12(b)(2) motion, the Court relies upon the declarations of both parties, which were unnotarized but made under penalty of perjury. Brown v. Showtime Networks, Inc., 394 F. Supp. 3d 418, 430 (S.D.N.Y. 2019) ("The fact that a declaration is not notarized does not preclude a Court" in ruling on a motion to dismiss pursuant to Rule 12(b)(2) "from considering the factual statements contained therein, where, as here, the declarations are signed 'under penalty of perjury.'").

**III. Discussion**

The only basis on which the Complaint alleges that the Court has personal jurisdiction over RORO is the forum selection clauses in the Bill(s) of Lading. see Dkt. No. 1 ¶ 2. Shipco argues that RORO is subject to the forum selection clauses because it is "the booking party (i.e. the party who nominated the cargo)" for the Bill(s) of Lading and it "agreed to be bound" by the forum selection clauses "when it received the booking confirmation referencing the Bill(s) of Lading and subsequently tendered the cargo."[3] Dkt. No. 12 at 8.

RORO argues, in part, that the forum selection clauses in the Bill(s) of Lading cannot confer jurisdiction over it because it was not a party to the Bill(s). Dkt. No. 10 at 10.

The dispositive issue here is therefore whether RORO is subject to the forum selection clauses, thus giving this Court jurisdiction over it, even though it claims to never have consented to appearing here. The Court holds that RORO is not.

RORO is not subject to the forum selection clauses because it did not sign the Bill(s) of Lading and it is not closely related to any of the parties that did. The agreement that RORO

---

[3] The Court declines to analyze the impact of the booking confirmation on Shipco's argument. The booking confirmation provided by Shipco was for transaction No. 10525828, dated August 13, 2019, which is different from either transaction at issue here. Dkt. No. 13 Ex. 5.

6

did sign with Shipco was the Carrier to Carrier Agreement, which is the agreement that actually controls what burdens can be imposed on RORO. That Agreement does not have a forum selection clause. Nor does it incorporate the forum selection clause from the Bill(s). Therefore, this Court has no contractual basis for exercising jurisdiction over RORO.

Further, because Shipco makes no argument that the Court has general or specific jurisdiction, Shipco fails to meet its burden. There is no factual or legal basis for the Court to exercise jurisdiction.

### A) Forum Selection Clause

> We have noted that, because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, supra, at 703, 102 S.Ct., at 2105. For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. See National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), their enforcement does not offend due process.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985); see also D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.").

7

In the Second Circuit, a forum selection clause is presumptively enforceable and capable of conferring jurisdiction if the party seeking to enforce the clause can show that: (1) "the clause was reasonably communicated to the party resisting enforcement;" (2) the clause was mandatory and not merely permissive; and (3) "the claims and parties involved in the suit are subject to the forum selection clause." Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). If all three showings are made, the resisting party can rebut the presumption of enforceability "by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"[4] Id. (quoting M/S Bremen, 407 U.S. at 10).

When, as here, a party does not sign the contract containing the forum selection clause, it may still nonetheless be bound by its terms. Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009); e.g., Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc., No. 12 CIV. 1033 PAE, 2012 WL 5363782, at *5 (S.D.N.Y. Oct. 26, 2012) (finding that a forum selection clause may confer personal jurisdiction over a non-

---

[4] "Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal requirements of due process." Exp.-Imp. Bank of the U.S. v. Hi-Films S.A. de C.V., No. 09 Civ. 3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010).

signatory to it); NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d
330, 350 (S.D.N.Y. 2020) (same); That's What She Said, Inc. v.
Gutter Games Ltd., No. 22 CIV. 4230 (KPF), 2023 WL 3346508, at
*4 (S.D.N.Y. May 9, 2023) (same). "[A] non-signatory to a
contract containing a forum selection clause may enforce the
forum selection clause against a signatory when the non-
signatory is 'closely related' to another signatory." Magi XXI,
Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 723 (2d
Cir. 2013); e.g., That's What She Said, Inc., 2023 WL 3346508 at
*4 (applying the closely related test to the determine if the
forum selection clause confers personal jurisdiction); Prospect
Funding Holdings, LLC v. Vinson, 256 F. Supp. 3d 318, 324
(S.D.N.Y. 2017) (same) (collecting cases). While the Second
Circuit has not reached the question of whether the inverse
applies—whether a signatory may enforce a forum selection clause
against a non-signatory—many district courts in this Circuit
apply the closely-related test to determine if a signatory can
use a forum selection clause to assert personal jurisdiction
over a non-signatory. Prospect Funding Holdings, LLC, 256 F.
Supp. 3d at 324 (collecting cases). Thus, courts have allowed a
signatory to enforce a forum selection clause as a basis to
establish personal jurisdiction over a non-signatory if the non-
signatory is so closely related to one of the signatories or to
the dispute "such that 'enforcement of the forum selection

clause is foreseeable.'" Yeda Rsch. & Dev. Co. Ltd. v. iCAD, Inc., No. 18 Civ. 8083, 2019 WL 4562409, at *6 (S.D.N.Y. Sept. 5, 2019). However, when a signatory is seeking to enforce a forum selection clause against a non-signatory to show that the court has jurisdiction over the non-signatory, courts have declined to apply the closely related standard when the signatory and non-signatory have a separate preexisting contractual relationship, in which they had an opportunity to negotiate and agree to a forum selection clause, but for whatever reason declined to do so. Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc., 328 F. Supp. 3d 329, 337 (S.D.N.Y. 2018).

     The Court declines to apply the closely related test here for the simple reason that Shipco and RORO had a Carrier to Carrier Agreement between themselves, which has no forum selection provision. "If the purpose of a foreseeability test is to enforce parties' reasonable expectations, then such a test is wholly unnecessary when the parties actually memorialized their expectations in a contract." Id. Shipco, who had the opportunity to negotiate a forum selection clause with RORO but declined to do so, will not be allowed to receive that windfall from applying a contract provision to which RORO never consented.

     Shipco, in the Certification of Megan Powanda, argues that the Carrier to Carrier Agreement incorporates the Terms and Conditions on the Bill(s) of Lading. Dkt. No. 13 ¶¶36-38. It

points to the provision stating: "the receiving carrier agrees to extend to the tendering carrier the full terms of its standard conditions of carriage indicated in its tariff." Dkt No. 13 Ex. 4 ¶ 6. It also separately alleges that its tariff includes the terms and conditions in the Bill of Lading. Dkt. No. 13 ¶ 14.

The Carrier to Carrier Agreement also states that the "tendering carrier agrees to annotate its bill of lading with the identity of the receiving carrier and to incorporate in its tariff reference to this agreement." Dkt No. 13 Ex. 4 ¶ 5. RORO relies on this provision to argue that Shipco, as the tendering carrier, was to incorporate the Carrier to Carrier Agreement into its tariff, including the provision that the Carrier to Carrier Agreement "supersedes any previous agreement." Dkt. No. 10. None of this makes any difference, since the Carrier to Carrier Agreement itself has no forum selection (let alone submission to jurisdiction) clause.

Even if the application of the closely related standard was appropriate here, Shipco makes no showing that RORO is closely related to Saco Shipping, the only party besides itself to have signed the Bill(s) of Lading, or to the dispute. A non-signatory is considered closely related to a signatory "if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct."

11

Weingard v. Telepathy, Inc., No. 05 Civ. 2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005). This generally occurs when the "non-signatory had an active role in the transaction between the signatories or . . . in the company that was the signatory." Yeda Rsch. & Dev. Co. Ltd., 2019 WL 4562409, at *7.

There is no allegation in the Complaint that RORO had any relationship with Saco Shipping, either as an agent, an alter-ego, an affiliate, an owner, or in any other capacity. There is no allegation that RORO played an active role in the transaction between the signatories, Saco and Shipco.[5] Shipco fails to establish that RORO had an active role with Saco Shipping.

RORO is not so closely related to the dispute (who is liable for the fines Shipco incurred from Saco's customer's failure to retrieve the cargo) that it should have foreseen appearing before this Court to resolve it. Shipco alleges that RORO had an active role in the transaction because it booked the shipments at the direction of Hoodblue, was named in the Bill(s) of Lading as the Forwarding Agent, and tendered the cargo. But all that these allegations amount to is that RORO was an intermediary. RORO was acting on behalf of a disclosed principal and, in doing so, it had no reason to suspect it would be hauled

---

[5] As Shipco does not put forward a Bill of Lading executed by Hoodblue, the Court does not address the question of whether RORO is closely related to Hoodblue.

into a foreign forum it did not consent to in order to answer

for tortious non-performance of the ultimate recipient.

There is also no showing that RORO is closely related to

the dispute as a third-party beneficiary to the Bill(s) of

Lading. See In re Optimal U.S. Litig., 813 F. Supp. 2d 351, 369

(S.D.N.Y. 2011) (binding non-signatories who were third-party

beneficiaries of the agreement). RORO benefited from the

transactions incidentally as it was presumably paid for its

services by Hoodblue, but it was not the intended beneficiary of

a contract to transfer and ship goods, in which it had no past,

present, or future legal title or interest. It was more like the

driver of a rented taxi, with no concern for the business

interest of its passengers.

## B) General or Specific Jurisdiction

Shipco argues that the New York Long Arm statute should not

apply to this case because it is brought in admiralty, not

diversity. Dkt. No. 12 at 2. That is incorrect. "[T]he law of

the forum state—here, New York—governs the issue of personal

jurisdiction in admiralty cases. See Klinghoffer v. S.N.C.

Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in

Amministrazione Straordinaria, 937 F.2d 44, 50 (2d Cir. 1991).

Under the laws of New York, a Court may exercise jurisdiction

over a defendant if it has general or specific jurisdiction, see

N.Y. C.P.L.R. §§ 301-02, and that exercise of jurisdiction is

"consistent with federal due process requirements," Grand River
Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir.
2005).

As neither the pleadings nor the briefs opposing this
motion assert any facts demonstrating RORO's contacts with New
York, Shipco fails to meet its burden to establish personal
jurisdiction over RORO. Nonetheless, a *sua sponte* review of the
Complaint and supporting certifications establishes that the
Court lacks either general or specific personal jurisdiction
over RORO.

### 1) General Jurisdiction

"General jurisdiction renders a defendant amenable to suit
on all claims." Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.,
328 F. Supp. 3d 329, 339 (S.D.N.Y. 2018). In New York, pursuant
to N.Y. C.P.L.R. § 301, general jurisdiction only exists when a
company "has engaged in such a continuous and systematic course
of 'doing business' [in New York] that a finding of its
'presence' [in New York] is warranted." Sonera Holding B.V. v.
Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014)
(alteration in original).  This means the company is not in New
York "occasionally or casually, but with a fair measure of
permanence and continuity." Landoil Res. Corp. v. Alexander &
Alexander Servs., Inc., 77 N.Y.2d 28, 34 (N.Y. 1990). In
assessing whether a party is doing business in New York, "New

14

York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." Id.

RORO is not subject to general jurisdiction in New York. The Complaint alleges that RORO is a limited liability company organized under the laws of Florida, with its principal place of business there. There is no allegation that RORO has an office in New York. Nor that RORO has employees, property, or bank accounts in New York.

The only time Shipco mentions RORO's contacts to New York is in the Certification of Megan Powanda, which says that RORO booked, over the span of a year (June 2019 to June 2020), nine cargo shipments to depart from the Port of New York. Dkt. No. 13 ¶ 45.  However, the "'[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services.'" Id. (quoting Laufer v. Ostrow, 434 N.E.2d 692, 694 (N.Y. 1982)). The solicitation must be substantial and continuous, and be made in addition to defendant's other activities in the state, to constitute grounds for conferring general jurisdiction. Id. Here, nine shipments are alone insufficient to show that an international transportation company substantially and

continuously solicits business in this state such that its
unsought participation in litigation here is warranted.

## 2) Specific Jurisdiction

"[S]pecific jurisdiction renders a defendant amenable to
suit only on those claims that arise from conduct related to the
forum." Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc., 328 F.
Supp. 3d 329, 339 (S.D.N.Y. 2018). New York law permits a court
to exercise personal jurisdiction over an out-of-state party if
that party (1) transacts business in New York, (2) commits a
tortious act in New York, (3) commits a tortious act outside of
New York that causes injury within New York, or (4) owns, uses,
or possesses real property in New York. N.Y. C.P.L.R. § 302(a).
Based on the facts alleged in the Complaint, only the first
activity merits discussion.

To establish jurisdiction under § 302(a)(1), Shipco must
show that RORO transacted business in New York and that the
claims arise from those business contacts. D.H. Blair & Co. v.
Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). Arising from means
that there is a "substantial nexus" between the transaction of
the business and the claim. Id. at 105.

Even if Shipco could show that the nine instances where
RORO booked cargo to depart from New York amount to RORO
purposefully availing itself of the benefits and protections of
New York law, there is no nexus between those transactions and

16

the claims here. The claims here are based on two transactions that were booked to be shipped out of Baltimore, Maryland and to Iquique, Chile. There is no allegation that any part of the transaction occurred in New York or that this transaction is related to a transaction that did pass through this State.

Shipco has accordingly failed to allege specific jurisdiction over RORO.

As a result, the Court does not have personal jurisdiction over RORO based on a forum selection clause, general jurisdiction, or specific jurisdiction. Shipco's Complaint is thus dismissed, without prejudice.

**IV.  Conclusion**

For the foregoing reasons, RORO's motion to dismiss the Complaint for lack of personal jurisdiction (Dkt. No. 9) is granted without prejudice, to allow Shipco to file suit in a court of competent jurisdiction.

The Clerk of Court is respectfully directed to close this case.

So Ordered.

Dated: New York, New York
       July 27, 2023

                                    Louis L. Stanton
                                    LOUIS L. STANTON
                                    U.S.D.J.

17